**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kellie Gibson, | No. CV-24-00464-TUC-JCH (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Before the Court is Plaintiff Kellie Gibson's appeal of the Social Security Administration Commissioner's denial of her application for disability benefits (Doc. 1). The Court has reviewed the Opening Brief, Answering Brief, and administrative record ("AR") (Docs. 13, 14, 17).  For the following reasons, Plaintiff's appeal is denied.

## PROCEDURAL HISTORY

On August 7, 2018, Kellie Gibson filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"). AR 71, 370–73. Gibson alleged she had been disabled and unable to work since August 9, 2017, due to depression, attention deficit disorder, post-traumatic stress disorder, back injuries, arthritis, poor eyesight, and periodontal disease. AR 73. Before August 9, 2017, Gibson worked in prepress graphic design for approximately 11 years. AR 82. Gibson's disability application was denied upon initial review and upon reconsideration. AR 101–04, 106–10.  After denial on reconsideration, Gibson requested a hearing in front of an administrative law judge ("ALJ"). AR 114–15.

**First Administrative Hearing**

On June 23, 2021, Gibson's first administrative hearing was held. *See* AR 34–70. After the hearing, ALJ Deborah Van Vleck found that Gibson had the severe impairments of obesity and aggravating mild degenerative disc disease of the spine. AR 15.  The ALJ determined that Gibson had the residual functional capacity ("RFC") to perform medium work with limitations. AR 21. She also found that Gibson was capable of performing her past relevant work as a graphic designer, data entry clerk, and instant print operator. AR 27. The ALJ concluded Gibson was not disabled under the Act. AR 28. The Appeals Council denied Gibson's request for review, AR 1, and Gibson appealed the decision to the United States District Court for the District of Arizona. *See* AR 1071–75.

**District Court Remand**

On March 20, 2023, United States District Judge Dominic Lanza reversed the ALJ's decision and remanded Gibson's case back to the Commissioner for further consideration. *See* AR 1077–96. Judge Lanza concluded the ALJ erred by failing to support her rejection of Nurse Practitioner ("NP") Dena Wampler's medical assessment with substantial evidence. *See* AR 1094–95. Judge Lanza found the ALJ had erroneously concluded that NP Wampler's assessment lacked supportability because the assessment was supported by Wampler's own treatment notes. *See* AR 1094. The Court instructed the ALJ to determine whether to credit Wampler's assessment in light of her extensive treatment notes on remand. AR 1096.

**Second Administrative Hearing**

On November 29, 2023, ALJ Peter Baum presided over a second administrative hearing. *See* AR 999–1028. At the hearing, medical expert Dr. Linda Miller testified to assist the ALJ in evaluating Gibson's medically determinable mental impairments. *See* AR 1006. Dr. Miller testified that in addition to the medically determinable mental impairment of  bipolar disorder, Gibson frequently used marijuana and had the medically determinable mental impairment of marijuana use disorder. *See* AR 1007–20.  After the hearing, ALJ Baum completed a five-step disability evaluation followed by a five-step drug

addiction and alcohol ("DAA") materiality determination.[1] AR 967–90.

In the materiality determination, the ALJ analyzed whether Gibson would be disabled if she stopped using marijuana. *See* AR 981–89. The ALJ found that Gibson would have the same severe medically determinable impairments without her marijuana use and that none of her impairments met the criteria of a listed impairment under the Act. *See* AR 981–83. The ALJ determined that, if she stopped using marijuana, Gibson would have the RFC to perform medium work with limitations. AR 983–88. The ALJ also found that Gibson remained unable to perform past relevant work without using marijuana, AR 988, but she would be able to perform work that existed in significant numbers in the national economy. AR 988–89. The ALJ thus concluded that Gibson's marijuana use was material to the disability determination, and Gibson was not disabled. AR 989. The Appeals Council denied Gibson's exceptions to the ALJ's decision. *See* AR 956–60.

**Second District Court Appeal**

On September 17, 2024, Gibson filed her appeal with this Court asserting that the Commissioner's decision is not supported by substantial evidence and is contrary to law (Doc. 1). On November 15, 2024, the Commissioner filed a certified copy of the administrative record (Doc. 13). On December 13, 2024, Gibson filed her Opening Brief (Doc. 14), and on February 12, 2025, the Commissioner filed his Answering Brief (Doc. 17). Gibson did not file an optional reply. This Order follows.

## BACKGROUND

Born in 1959, Gibson was 58 years old when she last filed for disability benefits. *See* AR 370. Gibson earned her high school diploma and completed some undergraduate courses at Pima Community College and the University of Arizona, among other educational institutions. AR 402. She worked several jobs from 2001 through July 2018, nearly all of them involving graphic design responsibilities. *See* AR 403, 1279–84. Gibson testified that she has been disabled since July 4, 2018, when she left her customer service

---

[1] The five-step disability evaluation and separate materiality determination are discussed in greater detail under the Claim Evaluation and Administrative Decision headings.

position at the Castle Club Casino. AR 1003. She also testified that she tried to find freelance graphic design work after July 2018, but that there were no available positions for non-degree holding applicants. AR 1014. Gibson further testified that she has been using marijuana four or five days a week since it became legal in Arizona and that her use allows her to get along with other people, "kill the time," and calm her anxiety. AR 1008, 1021. Until she began collecting retirement benefits at age sixty-two, Gibson had been receiving financial support from her mother. AR 1004.

## CLAIM EVALUATION

To determine whether a claimant is disabled under the Social Security Act, an ALJ follows a five-step sequential evaluation. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). The burden of proof is carried by the claimant at steps one through four. *Id*.

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Substantial gainful activity is "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (quoting *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001)). If the claimant is not engaged in substantial gainful activity, the evaluation proceeds to step two. *Bowen*, 482 U.S. at 140. At step two, the ALJ determines whether the claimant has a "medically severe impairment or combination of impairments." *Id*. at 140–41. An impairment is "severe" if it significantly limits the claimant's "physical or mental ability to do basic work activities." *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If the claimant has a medically severe impairment or combination of impairments, the evaluation proceeds to step three. *Bowen*, 482 U.S. at 141. At step three, the ALJ determines whether the medically severe impairment meets or equals one of the Act's listed impairments. *Id*. If the severe impairment does not meet or equal one of the listed impairments, the evaluation proceeds to step four. *Id*. Between steps three and four, the ALJ assesses the claimant's RFC. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222–23 (9th Cir. 2009). A claimant's RFC is what the claimant can do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). At step four, the ALJ determines

whether the severe impairment prevents the claimant from performing her past work. *Bowen*, 482 U.S. at 141. If the claimant cannot perform her past work, the evaluation proceeds to step five. *Id*. at 142. At step five, the burden shifts to the ALJ to show that the claimant is able to perform other work in the national economy in view of her age, education, and work experience. *Ford*, 950 F.3d at 1149. The claimant is entitled to disability benefits only if she is unable to perform other work in the national economy. *Bowen*, 482 U.S. at 142.

When a claimant has documented medical evidence of alcoholism or drug addiction, a disabled finding under the five-step inquiry does not automatically qualify her for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001); SSR 13-2P, 2013 WL 621536, at *4 (Feb. 20, 2013). A claimant will not be considered disabled if her drug addiction or alcoholism is found to be a "contributing factor material to the Commissioner's determination that the individual is disabled." *Bustamante*, 262 F.3d at 954 (quoting 20 C.F.R. §§ 404.1535(a), 416.935(a)). To determine whether drug addiction is a contributing factor material to the determination of disability, the ALJ must decide whether the claimant would still be disabled if she were not using drugs. SSR 13-2P, 2013 WL 621536, at *4–5. This determination, called a DAA materiality determination, involves the ALJ repeating the five-step evaluation and separating out the impact of the drug addiction from the other non-substance related impairments. *See Ball v. Massanari*, 254 F.3d 817, 822–23 (9th Cir. 2001). If the claimant's remaining limitations would be disabling without the drug-related impairments, then the drug addiction is not material to the determination of disability and the claimant is disabled.[2] *Id*. at 821. If the remaining limitations would not be disabling without the drug-related impairments, the drug addiction

---

[2] *See also Bustamante*, 262 F.3d at 955 (cleaned up) ("In other words, an ALJ must first conduct the five-step inquiry without separating out the impact of … drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis[.] If the ALJ finds that the claimant is disabled and there is medical evidence of his or her drug addiction or alcoholism, then the ALJ should proceed … to determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs." (quotations omitted)).

1     is a contributing factor material to the determination of disability and the claim is denied.
2     *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). In materiality determinations, the
3     claimant bears the burden of proving her drug addiction is not a contributing factor material
4     to the disability determination. *Ball*, 254 F.3d at 821.

5                                     **ADMINISTRATIVE DECISION**

6           In the initial five-step disability evaluation, which included Gibson's marijuana use,
7     the ALJ found that Gibson met the insured status requirements for disability benefits
8     through June 30, 2026. AR 968. At step one, the ALJ determined Gibson had not engaged
9     in substantial gainful activity since her alleged disability onset date of July 4, 2018.
10    AR 970. At step two, he found Gibson had the medically determinable severe impairments
11    of obesity, mild degenerative disc disease of the spine, bipolar type II disorder with anxiety,
12    and marijuana use disorder. *Id*. At step three, the ALJ determined none of Gibson's severe
13    impairments were disabling. *Id*. The ALJ next determined Gibson had the RFC to perform
14    medium work with limitations. AR 973. The limitations included no interaction with the
15    general public or customers, no teamwork doing final product work, no assembly work, no
16    strict quotas, and an inability to sustain simple routine tasks if working outside the
17    home. *Id*. At step four, the ALJ determined Gibson was unable to perform any past relevant
18    work. AR 979. At step five, the ALJ found there were no jobs that existed in significant
19    numbers in the national economy that Gibson could perform when using marijuana.
20    AR 980. The ALJ concluded Gibson was disabled when considering her marijuana use
21    disorder. AR 981.

22         At step two of the subsequent materiality determination, which omitted Gibson's
23    marijuana use disorder, the ALJ determined Gibson's severe impairments were the same
24    as initially determined. AR 981. At step three, the ALJ found none of Gibson's severe
25    impairments were disabling if she stopped using marijuana. *Id*. The ALJ next determined
26    that Gibson had the RFC to perform medium work with limitations. AR 983–84. The
27    limitations included no interaction with the public or customers, no teamwork doing final
28    product work, no assembly work, and no strict quotas. *Id.* At step four, the ALJ found

1    Gibson was unable to perform any past relevant work even without using marijuana. AR

2    988. However, at step five, the ALJ found there were jobs that existed in the national

3    economy that Gibson could perform when she was not using marijuana, including cleaner,

4    dishwasher, and lab equipment cleaner. AR 988–89. The ALJ thus determined Gibson's

5    marijuana use was a contributing factor material to the determination of disability and she

6    was not disabled. *Id.*

7                                   **LEGAL STANDARD**

8            Federal court review of social security decisions is limited. *Treichler v. Comm'r of*

9    *Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The Commissioner's denial of

10   benefits may be set aside only when his findings are "based on legal error or are not

11   supported by substantial evidence in the record as a whole." *Schneider v. Comm'r of Soc.*

12   *Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000). "Substantial evidence is more than a mere

13   scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind

14   might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749

15   (9th Cir. 1994). In determining whether the Commissioner's findings are supported by

16   substantial evidence, courts are to consider the record as a whole, "weighing both the

17   evidence that supports and the evidence that detracts from the Commissioner's

18   conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Where the evidence is

19   susceptible to more than one rational interpretation, courts must uphold the

20   Commissioner's decision. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

21   Courts review only those issues raised by the challenging party when deciding whether to

22   reverse the Commissioner's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir.

23   2001).

24                                     **DISCUSSION**

25           Gibson raises three arguments for remand to the Commissioner. *See* Doc. 14 at 2.[3]

26   Gibson argues the ALJ committed harmful error by: (i) omitting Dr. Miller's recommended

27   simple and repetitive work limitation in the RFC; (ii) failing to account for Gibson's

28

_____

[3] Citations are to CM/ECF page numbers unless otherwise indicated.

moderate mental functioning limitation in adapting and managing oneself in the RFC; and (iii) failing to reference a period of abstinence from marijuana to support his materiality determination. *See generally* Doc. 14 at 8–21. The Court finds that Gibson mischaracterizes Dr. Miller's hearing testimony; it was not erroneous to omit some of Dr. Miller's recommended work limitations in the residual functional capacity assessment; the assessment is supported by substantial evidence; the ALJ's written decision complies with the special psychiatric review technique; and it is unnecessary to reference a period of abstinence in a materiality determination. This Order addresses Gibson's arguments in the order they are raised.

## I.    Recommended Work Limitation Omission Not Harmful Error

Gibson first asserts the ALJ erred by omitting Dr. Miller's alleged work restriction that she be limited to "simple and repetitive tasks" when not using marijuana from the residual functional capacity assessment. *See* Doc. 14 at 12. Gibson also contends the RFC failed to include any limitation that she was restricted from performing tasks directly with a coworker. *Id.* Gibson argues the omission of these limitations without explanation is harmful error. *Id.* at 13. The Court disagrees.

### A.    Mischaracterization of Evidence

The first problem with Gibson's claim is that it mischaracterizes the evidence. At Gibson's November 29, 2023 disability hearing, Dr. Miller testified as a medical expert. *See* AR 1005–20. Her testimony was used to assist the ALJ in evaluating Gibson's medically determinable mental impairments. AR 1006. Dr. Miller testified that Gibson had the medically determinable mental impairments of bipolar disorder and marijuana use disorder. AR 1007. Dr. Miller concluded Gibson's bipolar disorder could be exacerbated by her marijuana use, and she would accordingly need to evaluate Gibson both with and without the use of marijuana. *See* AR 1015. Dr. Miller then testified:

> I would have [Gibson] work simple and repetitive tasks. She should not have to work with the public. She shouldn't have to work in a setting where she is part of a team that has to come up with the final work product. . . . [S]he would not be able to do [assembly-type work].

AR 1016. Dr. Miller then clarified her recommended work limitation, testifying:

> I don't think [Gibson] would be limited to simple and repetitive-type work if she didn't have to work with the public, didn't have to work against strict quotas, didn't have to work in teams with coworkers or directly with a coworker. I think she would probably not be limited to do simple and repetitive tasks.

AR 1016–17. The ALJ asked Dr. Miller whether the limitations applied to Gibson's capabilities "with or without the marijuana use disorder," to which Dr. Miller replied, "[t]hat's without the marijuana use disorder." AR 1017.

Considering the context of Dr. Miller's testimony, it is a mischaracterization of the evidence to claim that Dr. Miller recommended a work limitation that restricted Gibson only to "simple and repetitive tasks" when she was not using marijuana. *See* Doc. 14 at 11. The hearing transcript shows Dr. Miller modified her restrictive work limitation by testifying that Gibson would not be limited to simple and repetitive work if she did not have to work with the public, work in teams or directly with a coworker, and work against strict quotas. AR 1016–17. Accordingly, Gibson's argument that the ALJ erroneously rejected portions of Dr. Miller's testimony is based on a false premise.

**B.    Assessment Supported By Substantial Evidence**

Even if Dr. Miller had recommended that Gibson be exclusively restricted to simple and repetitive tasks when not using marijuana, the ALJ's RFC assessment would still be valid because the assessment discussed the supportability and consistency factors of Dr. Miller's opinion, and the RFC is supported by substantial evidence. Gibson fails to support her argument with controlling caselaw that requires an ALJ to fully adopt a medical expert's recommended limitations when the residual functional capacity assessment is otherwise adequately supported. *See* Doc. 14 at 11–13. Contrary to Gibson's argument, it is not erroneous for an ALJ's RFC to be consistent with but not identical to a physician's assessed limitations of a claimant. *See Lewis v. Colvin*, No. 3:15-CV-02307, 2017 WL 252284, at *4 (D. Or. Jan. 19, 2017) (citing *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010)) ("When an ALJ's findings are consistent with but not identical to a physician's assessed limitations of the claimant, those findings do not

constitute a rejection of the physician's opinion.").

An ALJ may discount a medical doctor's opinion by offering substantial evidence that the opinion is unsupported and inconsistent. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In doing so, the ALJ must articulate how persuasive he finds the opinion and explain how he considered its supportability and consistency in reaching his findings. *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2). "Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with the evidence from other medical and nonmedical sources." *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (cleaned up). A medical opinion can be rejected if it is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). A conflict between treatment notes and a treating provider's opinion and inconsistencies between the opinion and the claimant's daily activities may also constitute adequate reasons to discredit the opinion of a physician or other medical provider. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014), superseded by statute on other grounds. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Here, the ALJ's determination that Gibson had the RFC to perform medium work with limitations if she stopped using marijuana is supported by substantial evidence. *See* AR 983–88. In calculating the RFC, the ALJ referenced Gibson's daily activities of driving, cooking, caring for pets, volunteering, shopping, socializing, doing laundry, running a dishwasher, and emptying trash. AR 984. He included normal findings by NP Wampler that included a cooperative attitude, logical thought process, normal perceptions, and within-normal-limits insight, thought content, and cognition. *See* AR 984–87. The ALJ cited observations that Gibson's mood was stable with medications, she was organizing her house and doing yardwork while on Cymbalta, and that while she reported depression and anxiety, her mood and affect were normal on exam.

AR 985. The ALJ noted that in 2022 and 2023, Gibson reported improved mental symptoms that coincided with normal mental health examinations. AR 985. The ALJ incorporated Dr. Miller's opinion that without marijuana use Gibson had no limitation in understanding, remembering, or applying information; mild limitation in interacting with others and in concentrating, persisting, or maintaining pace; and moderate limitation in adapting and managing oneself. AR 986. In adopting the majority of Dr. Miller's recommended work limitations, the ALJ adequately addressed the supportability and consistency of her opinion. *See id.* The ALJ found Dr. Miller's opinion supportable because it incorporated Gibson's improvement when she was compliant with medications. *Id.* The ALJ found Dr. Miller's opinion consistent because the evidence as a whole reflected reports of improvement and stable exam findings when Gibson was not using marijuana. *See Id.* Accordingly, it was not erroneous for the ALJ to incorporate some but not all of Dr. Miller's assessed limitations.

### C.    Harmless Error Applies

To the extent that the ALJ erred by writing that Dr. Miller limited Gibson only to "simple repetitive tasks" when not using marijuana, *see* AR 986, the error is harmless. An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 416.920(a). To decide whether harmless error applies, courts are instructed to "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* Harmlessness does not require the court to determine what ultimate decision the ALJ would have made absent the error, but only to ask whether the remaining bases for the decision are sufficient to support the determination. *Carmickle*, 533 F.3d at 1162. As previously indicated, substantial evidence supports the ALJ's RFC assessment and any error in the ALJ's written decision is inconsequential to his nondisability determination. *See* AR 983–88. The ALJ made valid evidentiary inferences, weighed medical opinions with other medical evidence in the record, and sufficiently analyzed the supportability and consistency factors of

1    Dr. Miller's opinion. *See, e.g.*, AR 986. Accordingly, Gibson's first claim is denied.

2    **II.    Decision Adheres to Special Psychiatric Review Technique**

3         Gibson next asserts that the residual functional capacity assessment is not supported
4    by substantial evidence because the assessment fails to include a moderate mental
5    functioning limitation in adapting or managing oneself. Doc. 14 at 14–17. Gibson argues
6    Dr. Miller restricted her to simple and routine work to account for her moderate limitation
7    in adapting or managing oneself, and the ALJ erred by rejecting the limitation without
8    explanation. *See id.* at 15. Again, the Court disagrees.

9         **A.    Technique Defined**

10         In step two of the disability determination, an ALJ must determine whether the
11   claimant has a medically severe impairment or combination of impairments. *Bowen*,
12   482 U.S. at 140–41. To determine whether the claimant suffers from a medically
13   determinable mental impairment, an ALJ is required to follow a special psychiatric review
14   technique.  *See Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). To
15   follow the technique, the ALJ must: (i) determine whether an applicant has a medically
16   determinable mental impairment; (ii) rate the degree of functional limitation in four
17   functional areas; (iii) determine the severity of the mental impairment; and then, if the
18   impairment is severe, (iv) proceed to step three of the disability analysis to determine if the
19   impairment meets or equals a specific listed mental disorder. *Id.* (citations omitted). This
20   technique is documented in a psychiatric review technique form ("PRTF"). *Id.* An ALJ's
21   written decision must incorporate pertinent findings and conclusions based on the
22   technique and include a specific finding as to the degree of limitation in each of the
23   functional areas. *Id.*  In other words, the regulations contemplate that an ALJ's written
24   decision should contain a narrative rationale, instead of the checklist of conclusions found
25   in a PRTF.  *Id.*

26         **B.    Decision Follows Technique**

27         Here, the ALJ's written decision demonstrates that the ALJ followed the special
28   psychiatric review technique as required by social security regulations. *See* AR 981–83.

1    The ALJ determined Gibson suffered from the medically determinable mental impairments

2    of bipolar type II disorder and marijuana use disorder. AR 970. The ALJ rated the degree

3    of Gibson's functional limitations without the marijuana use disorder in the four functional

4    areas. AR 982–83. The ALJ found that Gibson had "no limitation" in understanding,

5    remembering, or applying information; "mild limitation" in interacting with others; "mild

6    limitation" with regard to concentrating, persisting, or maintaining pace; and "moderate

7    limitation" for adapting or managing oneself. *Id*. The ALJ reiterated that Gibson's mental

8    impairments were severe and that if she stopped using marijuana, she would not have an

9    impairment or combination of impairments that would meet one of the Acts's listed

10   impairments. AR 981. In formulating Gibson's residual functional capacity, the ALJ

11   provided that Gibson should not have interaction with the general public or customers, she

12   should not have to engage in teamwork doing final product work such as assembly work,

13   and that she should not have to work against strict quotas. AR 983–84.

14        **C.     Counterargument Unsupported and Unpersuasive**

15        Gibson argues the ALJ's residual functional capacity assessment as it concerns her

16   mental functioning limitations is insufficient as a matter of law because the RFC does not

17   address her limitations in the ability to adapt and manage oneself. Doc 14 at 16. Contrary

18   to Gibson's assertion, the ALJ's written decision incorporates pertinent findings and

19   conclusions based on the functional limitations of Gibson's medically determinable mental

20   impairments and is supported by substantial evidence. *See* AR 982–83. To the extent that

21   the ALJ failed to adopt any one of Dr. Miller's recommended work limitations verbatim,

22   this fails to render the ALJ's RFC assessment invalid. *See Keyser*, 648 F.3d at 726 (finding

23   harmful error where the ALJ's written decision failed to document the application of the

24   special psychiatric review technique and did not include specific findings as to the degree

25   of limitation in *any* of the four functional areas). Furthermore, "[n]othing in the regulations

26   suggests that the ALJ is required to provide one-to-one RFC limitations based on the broad

27   paragraph B categories used in the severity and listing steps." *Mary M. v. Kijakazi*,

28   No. 20-CV-1457, 2022 WL 891445, at *5 (S.D. Cal. Mar. 25, 2022).    Accordingly,

1    Gibson's second claim is denied.

2    **III.    ALJ's Materiality Determination Supported by Substantial Evidence**

3           Gibson finally argues the ALJ's finding that her marijuana use is material to the

4    determination of disability is not supported by substantial evidence because the ALJ did

5    not cite to any evidence from a period of sobriety to establish that her condition would

6    improve in the absence of marijuana use. Doc. 14 at 17. Instead, Gibson argues, the ALJ

7    impermissibly relied exclusively on Dr. Miller's testimony to conduct his determination

8    since no other credible evidence existed. *Id*. at 19. The Court finds Gibson mischaracterizes

9    the evidence and misinterprets the standard governing materiality determinations.

10          **A.    DAA Materiality Determinations**

11          Under the Act, a claimant "shall not be considered to be disabled . . . if alcoholism

12   or drug addiction would . . . be a contributing factor material to the Commissioner's

13   determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J).  In a case where

14   drug addiction is a factor, the ALJ must first conduct the five-step inquiry without

15   separating out the drug addiction's impact. *Bustamante*, 262 F.3d at 955. If the ALJ

16   concludes that the claimant is disabled, the ALJ must conduct another five-step inquiry to

17   determine whether the disability would remain if the claimant stopped using drugs. *Id.*

18   When determining whether a co-occurring mental disorder would remain, the ALJ must

19   rely on "evidence in the case record" that establishes the claimant would not be disabled in

20   the absence of the substance abuse. SSR 13-2P, 2013 WL 621536, at *9. Such evidence

21   includes objective medical findings, consultative examinations, and evidence from non-

22   medical sources (e.g., family, friends, the claimant).  *Id.* at *10–11.  When the record lacks

23   evidence of a period of abstinence, the Commissioner may consider the opinion of an

24   acceptable medical source to be sufficient evidence regarding materiality.  *See id.* at 9. If,

25   after conducting a materiality determination, the ALJ determines the claimant would not

26   be disabled absent the substance abuse, then substance abuse is material to the disability

27   determination and benefits must be denied. 20 C.F.R. § 416.935(b)(2)(i). Again, the

28   claimant bears the burden of proving that substance abuse is not a contributing factor

1    material to her disability.  *Parra*, 481 F.3d at 748.

2        **B.    ALJ's Materiality Determination**

3        As part of his materiality determination, the ALJ determined that if Gibson stopped

4    using marijuana, she would be capable of making a successful adjustment to work that

5    exists in significant numbers in the national economy. AR 988–89. To support his finding,

6    the ALJ referenced objective medical evidence and evidence from non-medical sources.

7    *See, e.g.*, AR 984 (referencing statements by Gibson's mother and friend that indicated she

8    was able to engage in relatively normal levels of activities when not using marijuana);

9    AR 984–85 (referencing NP Wampler's clinical findings that Gibson exhibited normal

10   behavior, attitude, and mood on numerous occasions); AR 985 (referencing progress notes

11   and treatment records that indicated normal mental status examinations and Gibson's own

12   statements that she continued to improve with medication and had increased energy);

13   AR 986 (referencing Dr. Miller's supported assessment that Gibson improved when

14   compliant with medication and Dr. Miller's review of Gibson's stable exam findings);

15   AR 987 (referencing Dr. Tromp's examination findings of good grooming, hygiene, and

16   physical appearance and no attention or concentration problems). This evidence provides

17   sufficient information to explain the rationale supporting the ALJ's DAA materiality

18   determination "so that a subsequent reviewer considering all of the evidence in the case

19   record is able to understand the basis for the materiality finding and the determination of

20   whether the claimant is disabled." SSR 13-2P, 2013 WL 621536, at *2.  As such, the ALJ's

21   materiality determination is supported by substantial evidence.

22       **C.    Counterarguments Unavailing**

23       The Court finds Gibson's arguments to the contrary inaccurate and unavailing.

24   Gibson argues the ALJ's materiality findings are not supported by substantial evidence

25   because he did not reference any medical evidence from a period of sobriety to establish

26   that her condition would improve in the absence of marijuana use. Doc. 14 at 17. But the

27   regulations guiding materiality determinations do not require evidence of a period of

28   sobriety to make a determination and provide that it is a claimant's burden to prove

1    disability not the ALJ's. *See* SSR 13-2P, 2013 WL 621536, at \*4 ("[I]t is our longstanding

2    policy that the claimant continues to have the burden of proving disability throughout the

3    DAA materiality analysis.  There does not have to be evidence from a period of abstinence

4    for the claimant to meet his or her burden of proving disability."); *Timothy S. v. Kijakazi*,

5    No. 1:20-CV-03114, 2022 WL 17364279, at \*6 (E.D. Wash. Jan. 24, 2022) (reiterating

6    that "SSR 13-2p does not require a period of abstinence," and ruling that "although there

7    is no period of abstinence, Plaintiff ha[d] not met his burden in demonstrating his substance

8    use [was] not material"); *Quill v. Colvin*, No. 2:13-CV-3097, 2014 WL 3608894, at \*10

9    (E.D. Wash. July 22, 2014) (observing that the "[p]laintiff's contention that the ALJ

10   incorrectly analyzed the DAA determination because no evidence exists of a period of

11   abstinence is not well taken."). Gibson's argument that the ALJ erred by relying

12   exclusively on Dr. Miller's testimony to determine her limitations in the absence of

13   marijuana use also fails. *See* Doc. 14 at 18. As indicated above, the ALJ's residual

14   functional capacity assessment and DAA materiality determinations are supported by

15   substantial evidence, and even a cursory review of the record demonstrates that the ALJ

16   did not exclusively rely on Dr. Miller's opinion or testimony to support his findings.

17   *See* AR 984–88. Accordingly, Gibson's final argument, and her appeal in its entirety, is

18   denied.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**ORDER**

2        Accordingly,

3        **IT IS ORDERED withdrawing** the reference to Magistrate Judge Bruce G.

4  Macdonald (Doc. 12).

5        **IT IS FURTHER ORDERED affirming** the decision of the Commissioner and

6  **directing** the Clerk of Court to enter judgment accordingly and close this case.

7        Dated this 4th day of September, 2025.

8

9

10

11                                          John C. Hinderaker

12                                 United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -
